Please call the next case. 113-1825, Calumet City School District No. 156. Counsel, you may proceed. Thank you, your honor. May it please the court, counsel, Peter Stavropoulos on behalf of the appellant, Calumet City School District No. 156. So, on the issue of accidents, our argument is that under the case law, specifically Nabisco Grants, traversing stairs and avoiding people on those stairs is a risk common to members of the general public, and in this case, the employee was not at an increased risk. When someone is going up and down the stairs and suffers a fall, there has to be a connection to the employment. We all do that. We live in an urban environment, whether you're getting off the L. Well, we don't all live in an urban environment, but go ahead. Okay, true, not all. I apologize. But in this area, that's what we experience. You go to Millennium Park, there are people everywhere. You walk down the sidewalk, there are people everywhere. On Thursday, when the Blackhawks have their victory parade and you try to get off the L, you have to avoid people on the stairs. That's common to this area. It's common to Ellumet City, it's common to Cook County. But are the people different here than they are the L, you know, other public venues, so to speak, that are stair venues, okay? Yeah, in each case you're going to encounter different types of people. If you're at Millennium Park or at the new park that they just built. I guess I have this image of what took place is that you have, what age children are going up from a PE class or traversing the stairs and how is that common to the public? It's common to the public because we can encounter that anywhere. When I go to a Cubs game, there are tons of kids running all over the place. I have a five-year-old daughter. Everywhere I go, there are kids running all over the place and you have to be careful. The difference, I think, is you might. I think there's a qualitative, the increase is from the general public, is from a qualitative standpoint. Yes, you might be able to go to a game and you might encounter unruly kids, okay, as you're saying. But this was part and parcel of her job. This is what happened every day. Wasn't she escorting people in and out of the classrooms and weren't kids running all over the place on a regular basis? Isn't that a distinctly factor from the general public? She testified that she escorted students throughout the day. As noted in my brief, the numbers don't really work out the way she said it. Yes, she was doing that. She did not testify that while she was escorting all these students that she had to traverse the stairs each time. They could have been in rooms right next to her. She only had five minutes between sessions. You know, if she was escorting students back to a classroom The commission said that she did. The commission said that Klingman testified that her job required her to use the staircase on a regular basis to go from her office on the second floor of the school down to the first floor in order to accompany students back to her office for speech therapy. So she did testify that she had to use the stairs to accompany the students. Did she not? The commission said that, but that's not what the record shows. Her testimony is that she had to escort the students to and from the classroom and there were discussions about how many students she saw in a day and how many times, what percentage of those did she have to escort? But she didn't say what percentage of the escorted students required her to traverse the stairway. She never said that. So while every student that she had to escort, she had to traverse the stairs. Maybe it was one per week. I mean, there's no evidence in the record to say that she had to regularly traverse the staircases while escorting students. Furthermore, in this instance, she was not escorting a student at the time of the fall. It was after 2.15, she had had her last therapy session and she was leaving the building. Now, this would be a completely different case if one of the exceptions outlined by the case law was present. Was she carrying anything? No. There's no evidence in the record that she was carrying anything related to her work or otherwise at the time of the fall. Was she escorting a student? No. No testimony, no evidence she was escorting a student at the time of the fall. Was she performing a specific job duty that required her to traverse those stairs at the time? No. In fact, if you look at the timeline, it's more likely that she was leaving for the day. So being pushed by a student who was part of a group, what she described as a rambunctious group, wouldn't qualify as a qualitative increase in risk? It would qualify if we were a positional risk state. There's no actual connection to her employment other than the fact she worked at a school where the rambunctious students were. How is that not connected to her employment? Because that would be a positional risk. Being at the school where the students were is one thing. In fact, I would say that... No, no, you're back to your standard. You said risk greater than that, right? Correct. And I think Justice Harris brought up the qualitative. We're going to talk about the qualitative. But that isn't really what the case law says either, is it? No, the qualitative telephone talks about qualitative versus quantitative. Yes, qualitative. So I think, is there a distinction here? I'll let Justice Harris ask. I'm not sure you responded to the qualitative. The risk can be qualitative or quantitative, can it not? Correct. To transform a neutral risk into a recoverable event. Correct. It could be one, the other, or a combination of the two. Correct. Correct. So the case law that talks about the qualitative risk talks about the actual connection to the employment, the specific job duties that are being performed at the time of the fall. A defect in the stairs would be a qualitative risk. Being in a position where there are students around and trying to avoid a student on the stairs or a person on the stairs, as the general public has to do, and failing to do so, is not connected to her employment, but for the fact that positionally she's in a school. But is the general public going to be, you know, risking colliding with students going up and down stairs all day? No, but I don't think she was either. And her testimony doesn't even give us facts to say that she was. What does her testimony, from your view, on the record, establish in terms of this? Again, I have this horde of young, energetic kids rushing up and taking over the entire stairway yelling at each other. And while preparing for this, I actually had that vision in my head also. So I understand exactly where you're coming from. But it's classrooms. It's a school. Kids run around. We know that. But this is from a P.E., right? Some type of P.E. class or something? She said that they were coming out of a P.E. class, and one of the students pushed her like that's what she said at trial. Initially, she said, right on the date of accident, I believe, she said that she was trying to avoid a student on the stairs who missed the step and fell. Well, can you continue with your argument, but from the standpoint that the commission chose to address it, which is they accepted her testimony that she was actually pushed by a student. So can you advance your argument using that set of facts as the premise? Yes, because frequency-wise, she did not establish that she used the stairs frequently. I would challenge counsel to get up here and point to one page of the record that gives us a number or even a way to figure out a number. There isn't one. If it's a qualitative reason, frequency-wise, nothing to do. Exactly. Go ahead. For purposes of my argument, I'm dismissing the quantitative one. So let's look at the qualitative. The case law says there has to be something specific about it. So what is a defect in the stairs? There isn't one. Carrying something, she wasn't. Performing a specific job duty, like escorting a student. So if she's escorting a student and distracted from navigating the stairs as members of the general public do because of the fact that she has this job connection by escorting a student at the time, that would be a qualitative risk. This is where I asked you to accept the premise that the commission chose to accept, which is that she was pushed. Not that her attention was diverted elsewhere and she slipped and The fact that she was pushed, that could happen to any member of the general public. But isn't a person more likely to be pushed or bumped into by students running in a school than they are in... You seem to be removing this from the context. We could go outside today and get run over by somebody. That's your argument, right? People get bumped and run over by the public all the time. But isn't it more likely qualitatively to happen in a school where people are rushing to and from classrooms than it is other places in general? Isn't it? Did you say qualitatively? It's qualitative, right. More likely to be collided with by students in a school than you are running into people on the street. And just so I understand your question, is it based on the fact that in your mind, quantitatively, it happens more frequently than... Well, it could be either one. No, he's arguing qualitative because these stairs are always overcrowded with students. And it becomes qualitative. And that's an important point, the fact that the commission said that generally speaking, the stairwells were crowded and congested. However, there was no evidence or testimony that that was true at the time of this fall. She testified and she was asked whether students were regularly on the stairways and she responded, quote, always, close quote. Correct. So that evidence is in the record. But they were always there. There was no testimony that that was... Well, it sounds pretty... Yes. I suppose if we look at what she actually said, she is saying that from the time the school bell rings and school is in session until all the children leave, the stairwells are always congested. It's hard to imagine, it may seem to you, it is in the record, correct? It's in the record that she says they were always there. Right. Yes. That is some evidence. That is some evidence. But it's not sufficient evidence to support a finding that that was true at the time of the fall. She didn't say that. To say that they were always there, that doesn't even... Does that happen downstairs all day long? Does it? It does. At the end of the school day, I'm not sure that they would always be running up the stairs or going up the stairs at 2.15 when they're already on the first floor. So... I'm curious about the, you know, how this might translate into another work setting. Let's say that you have a police department where you have an officer going downstairs and you have another police officer escorting a jail inmate upstairs and the jail inmate pushes the officer down the stairs. You would put this into a neutral risk analysis that the officer that was pushed down the stairs was traversing the stairs and therefore at no greater risk than the general public. How can that be? In your fact pattern, would the accused or whatever the person is, inmate, intentionally push the person down the stairs? Is that what you're saying? Well, let's say it's intentional. Okay. If it's intentional, I think that's a different situation. I would say that given the fact that they are police officers and that, you know, the altercation, the possibility of an altercation between someone who's been arrested and a police officer exists, that's a different situation than a person going up the stairs trying to squeeze past another one, pushing a leg and causing a fall. You'd say that was a risk distinctly associated with the police officer's employment? Yes. Whereas going up and down the stairs is not a risk distinctly associated with a speech therapist. So we would have to examine the subjective intent of the inmate in pushing the police officer to determine whether or not it's a neutral risk. If not the subjective intent, just the qualitative risk associated with that, the risk that there would be an altercation between those two types of parties. Right. And you're saying that it falls within the realm of the police officer's job duties to have a risk of being pushed by an accused. It certainly does. Therefore, it's a risk of his employment. Exactly. And that's exactly why when you get pulled over at night, they tell you, get your license out, put your hands on the wheel. When a police officer approaches a vehicle to pull even someone, a law-abiding citizen like me over, I do that to give them that level of comfort because they're expecting an altercation. They're expecting that type of situation where there could, something like that could happen. So if a police officer is going down a flight of stairs and sees an inmate coming up the stairs, you know, that person, he'd be on the guard that that type of intentional altercation might occur. Maybe the person might try to escape. Getting back to the teacher on the stairs, I mean, are we required to set aside our common sense in these situations? I mean, we don't want to go, as my learned colleague, Justice Holedge, frequently says, Dior is the record. But this is a school. You know, I'm having a hard time setting aside the image that there's more likely to be a collision and kids hurrying up and down stairs, and you're more likely to get bumped into here than at the civic opera house. I don't see a lot of people running around bumping into people at an opera as I do at a school. Now, is my image completely wrong about this or what? No. And from my examination of all of the appellate court decisions I looked at, no, not only are you not required to set aside your common sense, you don't. However, in this case, her job, there's just a lack of connection between her job duties and this argument that you need an element of quantitative as well. If you're a teacher that sits in your classroom all day long, you go, you walk in your classroom, and you sit down, and you teach your classes throughout the day, and then you leave at the end of the day, and you get knocked down by a student. If there was a defect in the stairs, would you also have to have a quantitative aspect in order to take it out of the neutral risk? No. I think the case law says if there's a defect in the stairs, then the fact that the employer had a defect on its premises that caused the fall... What if she's carrying a box of supplies and she falls? Do you also have to have a quantitative increase as well? The case law says no, because that was a specific incident. So... When the increased risk is, I think what the court is saying, the fact that these students are around, so being around them is the increased risk. If I'm understanding these questions, that's what the court is asking me. So being around the students is the increased risk. In my opinion, then you need some quantitative exposure to that, and you need the frequency in order to... So that's what you're saying. I guess this is what I want to get to. You're saying there should have testified as to how many times she encounters the students, goes up and down the stairs. What's missing here, in your opinion? That's exactly what's missing. The most recent decision, the Dixon case, I believe it is, where this court found, you know, I think it was a police officer went up and down the stairs seven to ten times a day, and the court found that to be an increased risk because of the frequency. We don't have that here. We don't know if it was one time... It wasn't a qualitative analysis. Right. No. So in your opinion, this is a hybrid. It has to combine elements of both in order for there to be a recovery. Right. Because there was no other connection to her employment. If she were carrying a box of supplies, she would have said, I was carrying a box of supplies, and I fell down the stairs, and the case law would say that I buy it, I wouldn't be here right now. You know? No. No connection to her employment. Is there... Why was she taking the stairs? It was... She was done with her therapy sessions, and she was leaving the building. It was past 2.15. It happened around 2.25. She testified that her therapy sessions ended at 2.15. If she were going down those stairs to go pick up a student from the first floor to go back up and got knocked down, I think there would be... I have a harder problem there in the case of performing a job-specific duty at the time that she encountered the student and fell. So the fact that she's leaving for the day, that's what takes it up. The fact that she could be collided with by the students at any point, coming and going from the building all day long, she's leaving for the day, that's why she can't become one? That's part of it. I think that goes into the qualitative analysis. I think if she were escorting a student, going to pick up a student, dropping off a student, going to pick up paperwork, dropping off paperwork, something that was specific to a job... But the problem is there's students all around. You're tying her into a... She has to be doing a specific activity in the school to recover. Okay. Let me throw something else in here. Sure. I mean, you keep saying she was leaving for the day. She never testified to that, did she? She didn't. You're implying that. And in fact, she testified that in addition to conducting therapy sessions, she also had morning and afternoon duty where she was required to stand outside and watch the children as they went into and out of the building. And she testified she was prepared to go down the stairs for afternoon duty. Isn't that what her testimony was? If you're looking at that, then yes. I stand corrected. So from that, how can we infer or imply that she was leaving? She testified she was going down for afternoon duty. I think she's still in the course of it. Oh, okay. But at the time of the fall, you know, she was not carrying... In looking at all these cases, most of the connections drawn by this court have been specific. You know, a defect carrying something, rushing somewhere. There's no evidence of any of that. And without the quantitative portion of this... The commissioner found that she established that the students in the school congregated on the stairs and generally congesting the staircase, that that increased the risk of The staircase was regularly crowded with students going up and down. Now, if you're in a facility where stairs are used by large groups of people more frequently than they would be under normal circumstances, then in that particular case, does that increase the risk of harm from a qualitative standpoint? If your work puts you in the position where there are more people on the stairs... No, I actually don't think it does. You don't think that makes a qualitative distinction? No, just people being on the stairs, that happens all the time. And, you know, regularly traversing the stairs and needing to avoid people on the stairs, the case law says, is a risk common to members of the general public. Whether there's one person on the stair or ten people... So it wouldn't make any difference to you if you were in a facility that had large crowds of people moving up and down the stairs as opposed to a normal staircase where... On a regular basis? On a regular basis. I actually think that you could make the opposite argument as well, that given the fact that it's not congested and you don't have to pay as much attention and you can move faster, that that would increase your risk. So, no, I don't know that that's a factor here that would increase your risk to the mere number of people on the stairs. I think implicitly in this, it seems to me, going back to this image I have, we're dealing not with the nature of the people on the stairs, you know, road rats, okay? I mean, unpredictable. You see that. But you also see... I mean, I think a lot of us take an attempt to avoid that situation, okay? Well, having a five-year-old, I go to a lot of birthday parties these days. So, you know, I think I have three this weekend. And while they are somewhat unpredictable, they are also easier to avoid. They're smaller. You know, if they do hit me, it doesn't impact me as much as if I struck, you know, another adult on the street. They're small people. Well, and we don't know how small they were. No, we don't. So, the bottom line is, you know, avoiding people on the stairs, the case law says, is a risk that's shared by members of the general public. And that's what she was trying to do. You're ending where you began, Phil. You're ending where you began. Counsel, you'll have time on reply. Thank you. Okay. Counsel may respond. Good morning, Your Honor. Counsel. May it please the court. I guess as a grandfather of 14, I don't want to start this way, but I'm going to. The kids are the hazard. The defective condition in the workplace are the kids in this case. Judge Holdrich mentioned a hoard of children on the stairway. Well, yes, that is the picture we're painting. This lady worked in this place every day, and whatever number of children she had that she worked with, she testified that it was her responsibility to go down those stairways. And this was in recess periods between classes. So, I mean, we all know what a grammar school, this is a grammar school. These are kids. These are from 6 years old to 11 years old. And so there's kids, and they're coming out of a physical ed class, and there's, yeah, there's a hoard of them running up the stairs, probably to get to another class. And they're running and carrying on and doing the crazy stuff the kids do, and they ran into her or ran by her or pushed by her or whatever they did, and she wound up going down those 15 stairs. My point is that what we're talking about here today is a manifest way to the evidence, and the evidence in most of this factual scenario is coming from the defendant, the school teacher, who testified as to the classes that she taught, going from second floor to first floor, number of students that were on the stairway. This is the plaintiff's school. There was no evidence that was produced contrary to what the employee stated. You know, with opposing counsel, we spent quite a bit of time discussing what the proper analysis is, what the framework is, and I think there was maybe a position on his part that it's a combination of quantitative and qualitative aspects that would need to be present in order to remove this from the neutral risk category. Do you believe or do you think that in this situation that it requires not only a qualitative increase in risk but also a quantitative increase because of the number of times she would traverse the steps? Well, it's certainly an increased risk based upon the number of times she goes up and down the stair. There is that here. Is it necessary? I don't think so, Judge. I think the risk here is the number of kids and, if you want, the defective condition is they're all young kids that are screwing around, running up and down the stairs all over the place. Let's back up from that a step then as well. Let's say it's a teacher who doesn't regularly go up and down the stairs and she's coming down the stairs and a single student walking behind her clips her heel and causes her to trip and fall down the steps. Would that be a compensable injury? Would that take it out of the neutral risk category because she was somehow tripped on her way down? I guess, Judge, if there was always only one student behind you? Yes. But in this case, it's not what we're talking about. I guess I can't answer your, I don't know how that would work in a grammar school setting. So I guess this is kind of a specific case because it is break times and she's going down to get her student to bring up to the class and there's always going to be a horde of kids. Taking out the horde of students just with a single student, are you saying that that wouldn't be a compensable injury? I'm not sure how to answer that because I guess you'd have to say that it was always going to be one person on the step, correct? I mean in the scenario you're giving me. It's hard to say that that would be an increased risk, that if you were going up and down the stairway 20 times every day and there was always going to be one student that you had to avoid. Well, isn't there a distinction as to whether this injury took place when she was just walking down a flight of stairs, there weren't kids rambunctiously running around, she's just walking down a flight of stairs and she falls. And that's different, I think, than she's walking down a flight of stairs and she's met by an entire group of kids running from one class to another and, in her words, running rambunctiously all over the place. It's the behavior of the children, I think, that makes it a qualitative distinction as opposed to a quantitative distinction. If she had fallen down these stairs and there were no kids on the stairs, it's not compensable. I think that's right. I think that's probably right. I mean, it's the children that are running all over the place on a staircase that she's required to traverse that makes this qualitatively different than just a simple falling down a flight of stairs. And it's the nature of the children, their rambunctious nature, that takes it out of his argument, because his argument is, and it has superficial appeal, hey, anybody walking around downtown in the general public could be bumped into by somebody. Right. But they're not dealing with a bunch of rambunctious children running around all day long. Not every day, not all day long, correct. My position. So is that your position? That's my position, Judge. I mean, I don't think I really need to go beyond that. Thank you. Thank you, Counsel. Counsel, you may reply. Thank you, Your Honor. Tell us why they were not rambunctious children. Justice's question is a good one about a single student because this fall actually did involve a single student. While she testified that there was a group, we don't know how many kids were in this group, but this marauding horde of eight-year-olds that was rushing her up the stairs, the fall was actually caused by, according to the commission, one child trying to squeeze between her and the handrail. You know, you can go to the Shedd Aquarium and that can happen to you. Well, that was the immediate cause. Yes, and that's what we're dealing with here. You know, it was not a function of a group of kids that caused her to fall. It was the single person. She was going down the stairs. The horde was going up the stairs. That's the testimony. And one person broke away, one rogue student broke away from the horde, saying, I can beat the others up to the top if I just take the clear path, and this adult, unfortunately, is in my way, but I can squeeze in between her and the handrail and beat it up there and be the first up there. Possibly. Possibly. So what you're saying is she had to be run over by the horde in order to compensate? No, but what I'm saying is the commission finding that it's an important fact that the staircases were regularly congested with congregating students doesn't really apply here because it wasn't a group effect on the petitioner. She fell as a result of the actions of one student. So you're saying there had to be a group effect then? So in other words, if she was trampled by an entire crowd, you would find it compensable, but because she was knocked down by one person in the crowd, in a crowded staircase, it's not compensable. If the crowd is what increased her risk, which is what the commission found, then, yeah, I would think the crowd would have had an impact. Well, that makes it the qualitative distinction that allows her to recover from falling when she's bumped on the stairs at that particular point in time. It's not the fact that she was actually trampled by a crowd. It's the danger of traversing a staircase with wild children running all around that makes it a qualitative distinction from a normal neutral risk of just simply traversing stairs. Yeah, I understand your point. Actually, the commission found it relevant that there was a crowd and that the crowd increased her risk. But a crowd of people or kids can be found anywhere in the city. Schools are out of session right now. Are they running away now? They're not going to have to run down and see a horde of kids running up and down the street? Maybe. Thursday they'll be able to, for sure, when the parade comes through. The Blackhawks parade. Is it Thursday now? Is that when it's set? I don't think they've released the time yet, and based on the fact that it's supposed to rain on Thursday, there is some discussion about pushing it back to Friday. Oh, good idea. We could also do something to increase risk. If the board has any sway to make it Friday, that would be great. We don't. These are risks that are shared by the general public, whether it's a group of students, whether it's disabled people, whether it's people who are hard of hearing, whether it's people who are blind. There are all kinds of people that we encounter moving about in society on the stairs, and we try to avoid them and they try to avoid us. We hope not all of them do. And under the case law, it's still a neutral risk. Without the quantitative portion of it that's tied to her job, or without any specific instance in this matter causing her to fall, carrying something, a box of supplies, scissors, whatever, she's not at an increased risk. Thank you. Thank you, Counsel Balls, for your arguments in this matter. We've taken an advisement that this position shall issue. We'll stand in recess until 1.30.